UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ARTHUR SATTERLY, et al.
                                   PLAINTIFFS

v.                          CIVIL ACTION NO. 3:07-CV-710-S

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, et al.                  DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on the defendants' motion for summary judgment (DN 7). The plaintiffs have responded to the motion (DN 16) and the defendants have replied (DN 17). For the reasons that follow, the court will grant the defendants' motion for summary judgment.

### BACKGROUND

This action arises from an altercation between plaintiffs, Arthur Satterly ("Satterly"), Richard Mercado ("Mercado"), and Daniel Pagniozzi ("Pagniozzi") (hereinafter collectively, "Plaintiffs"), and defendant, Louisville Metro Police Officer Myles Cosgrove ("Cosgrove") that occurred at approximately 12:45 a.m., on December 23, 2006, at a Speedway gas station in Louisville, Kentucky.

Recognizing the Plaintiffs' car as one that he had tried to stop the week before on suspicion of drunk driving, Cosgrove followed the vehicle as it pulled into the Speedway. Satterly was the driver of the car and Mercado and Pagniozzi were passengers.

Cosgrove approached the car on foot as Pagniozzi was getting out of it. Cosgrove ordered Pagniozzi to get back in the car, and Pagniozzi complied. As Cosgrove came around to the driver's side of the vehicle, Satterly put the car in reverse and started to back up. Cosgrove claims that

Satterly backed up at a high rate of speed. *Cosgrove's PIU Statement, pp. 3-4.* Pagniozzi jumped out of the car. Cosgrove broke out the driver's side window with his flashlight. Satterly put the car back into gear and started to drive away. Cosgrove claims that Satterly accelerated back into gear toward him, and that he feared for his life and the safety of others. *Id.* at 4. As Satterly maneuvered away, Cosgrove fired eleven (11) shots into the driver's side door, hitting Satterly seven times. The car came to a stop on an embankment approximately fifty (50) yards from the locus of the melee. The entire episode unfolded in approximately thirty (30) seconds. *Pagniozzi's PIU Statement, p. 14.* Satterly suffered non-fatal injuries as a result of his gunshot wounds. Neither Mercado nor Pagniozzi suffered physical injury. Cosgrove went unharmed, as well.

As a result of this incident, Satterly was charged in Jefferson County Circuit Court with Wanton Endangerment in the First Degree; Fleeing or Evading Police in the First Degree; Operating a Motor Vehicle By a Person Whose Operator's License has been Revoked, Suspended, Canceled or Denied; and Illegal Possession of Drug Paraphernalia. In that case, Satterly moved to quash his arrest, alleging that he had been arrested without probable cause or legal justification, and that Cosgrove used excessive force in effectuating arrest. Satterly further moved to suppress all physical evidence seized from his vehicle and all statements made as a direct product of the arrest. After a suppression hearing, Judge James M. Shake denied Satterly's motions to quash and suppress, and found in a written Opinion and Order dated November 26, 2007, that Cosgrove had probable cause to arrest Satterly and did not use excessive force in effectuating the arrest. On November 26, 2007, a jury found Satterly guilty of wanton endangerment, fleeing police, and operating a vehicle without a license. Satterly was acquitted of the drug-related charge. On February 1, 2008, the Jefferson Circuit Court sentenced Satterly to four years imprisonment.[1]

---

[1] Satterly's case is currently pending appeal.

Plaintiffs filed this civil rights action against Cosgrove and Louisville-Jefferson County Metro Government ("Metro") pursuant to 42 U.S.C. § 1983 and state law. Plaintiffs specifically allege unlawful arrest pursuant to Section 1983; state law false arrest; excessive force pursuant to Section 1983; and state law assault and battery on the part of Cosgrove to the extent that he used excessive force during arrest and arrested the plaintiffs without probable cause. Plaintiffs specifically allege state law respondeat superior on the part of Metro to the extent that Metro is liable for all torts committed by Cosgrove; and state law indemnification on the part of Metro to the extent that Metro is obligated to indemnify any tort judgment for which Cosgrove is liable by virtue of its police union contract. Plaintiffs also seek a judgment against Metro, alleging its policies and practices are unconstitutional.

This court has federal question jurisdiction over the claims in this action arising under 42 U.S.C. § 1983 and supplemental jurisdiction over the related state law claims. 28 U.S.C. 1331; 28 U.S.C. 1367.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes

it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## DISCUSSION

In their initial pleading, Plaintiffs collectively alleged a series of arrest and excessive force claims against the defendants, individually and severally, based on both federal and state law; and Plaintiffs alleged independent vicarious liability and indemnification claims against Metro based on state law. Upon the defendants' properly made and supported motion for summary judgment, Plaintiffs had an affirmative obligation to respond. FED. R. CIV. P. 56(e)(2). Plaintiffs may not rely merely on allegations in their own complaint; rather their response must set out specific facts showing a genuine issue for trial. *Id.* As to Plaintiffs' claims against Metro and all state law claims asserted by Mercado and Pagniozzi, individually, Plaintiffs have failed to set out any facts - let alone specific facts - showing a genuine issue for trial. In essence, Plaintiffs have abandoned those claims; and they are summarily dismissed under Rule 56. *Id.* Plaintiffs' remaining claims fail as a matter of law and summary judgment is granted for defendants.

Plaintiffs' claims against Cosgrove arise from allegations that Cosgrove used excessive force during arrest and that Cosgrove arrested them without probable cause. It is precisely these ultimate issues - whether Cosgrove's justification for arresting Satterly was *reasonable*; whether the force Cosgrove used during arrest was *unreasonable* - that Plaintiffs argue are in dispute.

Cosgrove contends that there are no genuine issues of fact in this case and that he is entitled to judgment as a matter of law. This contention rests on the crux that any material facts, which may have been in dispute in the past, are presently settled based on findings from the criminal proceeding

precedent to this action.

It is not that the parties materially disagree on the events of the midnight hour at Speedway on December 23; rather they dispute the legal effect of the Jefferson Circuit Court's ruling on Satterly's Motion to Suppress, and of Satterly's subsequent criminal conviction at trial by jury. In this case, the state court's ruling and the jury's verdict both trigger the traditional doctrine of issue preclusion, and Plaintiffs are collaterally estopped from relitigating matters here which have been litigated and decided in the prior action.[2]

"The Supreme Court has held that issues decided in a state-court criminal proceeding may preclude relitigation of the same issues in a subsequent § 1983 action in federal court." *Donovan v. Thames*, 105 F.3d 291, 293 (6th Cir. 1997) (citing *Allen v. McCurry*, 449 U.S. 90, 102, 101 S. Ct. 411, 419, 66 L. Ed. 2d 308 (1980). "In *Allen*, the respondent had been convicted in a state-court criminal proceeding in which he had moved to suppress certain evidence on the ground that it had been obtained in violation of his Fourth Amendment rights. The trial court denied the motion to suppress, and the respondent subsequently brought a § 1983 action in federal court against the officers who had seized the evidence. The Supreme Court held that the suit was barred by issue preclusion because the Fourth Amendment violation had been resolved against the respondent by denial of his motion to suppress in the state court criminal trial." *Id.* (internal citations omitted)

Under Kentucky law, "...[T]he doctrine of collateral estoppel only applies to issues actually litigated." *City of Covington v. Board of Trustees of Policemen's and Firemen's Retirement Fund*, 903 S.W.2d 517, 521 (Ky. 1995). "The general rule is that a judgment in a former action operates

---

[2]The court need not address whether Satterly's Section 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). Issue preclusion operates in this instance to preclude Plaintiffs' claims under 42 U.S.C. § 1983, as well Satterly's state law claims, by removing from issue material facts, which as settled, render the claims uncognizable.

as an estoppel only to matters which were necessarily involved and determined in the former action, and is not conclusive as to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment." *Donovan* at 295. (quoting *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995). "...[A] criminal conviction may be used for purposes of collateral estoppel in later civil proceedings, but it is also clear that to be so utilized the criminal judgment must of necessity finally dispose of the matters in controversy." *Gossage* at 248.

"Moreover, Kentucky has approved the use of non-mutual collateral estoppel, i.e., issue preclusion may apply against a party to a prior suit even though the parties in the subsequent suit are not identical to the parties in the prior action." *Donovan* at 295 (citing *City of Covington* at 522). The fact that there is an appeal pending in Satterly's criminal case "does not destroy the finality of the judgment for the purposes of issue preclusion under Kentucky law." *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997) (citing *Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. App., 1991)). It is within this legal framework that the court reviews the findings from Satterly's criminal proceeding.

Plaintiffs claim that a genuine issue of material fact exists as to whether Cosgrove used excessive force during arrest. However, the reasonableness of the force Cosgrove used has been actually litigated and determined in the precedent criminal proceeding. Satterly put excessive force into issue in that proceeding when he moved the court to quash and suppress all evidence obtained as a product of the arrest. In his motion to suppress, Satterly alleged that Cosgrove lacked legal justification for shooting him. Motion to Suppress, ¶ 4. see also Motion to Suppress, ¶¶ 6, 7. In its opinion and order, the court made clear that it took Satterly's motion under consideration "...on the grounds... that excessive force was used in effectuating [the] arrest." Opinion and Order, p. 1. After

an extensive evidentiary hearing, the court ruled on the reasonableness of the force that Cosgrove used and its attendant Fourth Amendment implications under *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "...[T]he reasonableness inquiry in an excessive force case is... whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [the officer's] underlying intent or motivation." *Graham* at 397 (internal quotation marks omitted). *Graham* also provides a balancing test to guide the reasonableness determination. *Id.* at 396. The state court applied the correct test in line with the proper standard and arrived at a conclusion:

> Clearly the offense was not a serious one. However, Officer Cosgrove clearly recognized the risk of the out-of-control vehicle to himself and others. The fishtailing and doughnut configurations in proximity to pedestrians and to the highly flammable gas pumps posed a danger to everyone at the Speedway. It is equally evident that [Satterly] was actively fleeing. He told his passengers that he could not get caught. *Based on the extreme danger and the highly reckless conduct of [Satterly], [Cosgrove's] reaction was not unduly disproportionate to the situation.*"

Opinion and Order at 6-7 (emphasis added).

Accordingly, the issue of excessive force has been resolved against Plaintiffs by denial of Satterly's motion to suppress in the state court criminal trial.

Notably, there is an independent basis for finding excessive force resolved against Plaintiffs; the issue was raised at Satterly's trial and submitted to the jury. As an answer to his indictment for wanton endangerment, Satterly propounded the defense of Self Protection. Accordingly, the jury was instructed, in pertinent part, "If you believe from the evidence beyond a reasonable doubt that... *Myles Cosgrove was not using any more force than was reasonably necessary to effect the detention*... then the defendant... is not entitled to the defense of self-protection." Jury Instructions, Instruction No. 2 (emphasis added).

Despite the asserted Self Protection defense, the jury found Satterly guilty of Wanton Endangerment in the First Degree. By convicting Satterly on this charge, the jury necessarily found

that Cosgrove had not used excessive force. Therefore, a determination of the issue of excessive force was found beyond a reasonable doubt.

It is of no consequence that under Kentucky law the offense of wanton endangerment does not require a finding that Cosgrove did not use excessive force in effecting arrest. see Ky. Rev. Stat. Ann. § 508.060 (Banks-Baldwin West 2007). Twin findings that a defendant is guilty of wanton endangerment while an officer is guilty of using excessive force may not be mutually exclusive. However, in this case, the finding that "Myles Cosgrove was not using any more force than was reasonably necessary to effect the detention" was essential to Satterly's conviction for wanton endangerment due to the jury's consideration of the Self Protection defense.

Plaintiffs also claim that a genuine issue of material fact exists as to whether Cosgrove had probable cause for arrest. For the same reasons as detailed above, the issue of probable cause is not disputed as fact in this action. Satterly put probable cause into issue in the prior criminal proceeding in his motion to suppress. Satterly alleged that "...Cosgrove had neither legal justification nor probable cause to justify a vehicle stop, search or arrest of [him]." Motion to Suppress, ¶ 2. see also Motion to Suppress, ¶ 6. In its opinion and order, the court made clear that it took Satterly's motion under consideration "...on the grounds that the arrest lacked probable cause..." Opinion and Order at 1. The court ruled on the lawfulness of the arrest under *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981) and *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). Based upon the totality of the circumstances, a detaining officer must have a particularized and objective basis for suspecting a particular person stopped of criminal activity. *Cortez* at 417-18. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them..." *Arvizu* at 273. Pursuant to *Cortez* and *Arvizu*, the court concluded:

In examining the totality of the circumstances, the Court finds that there were sufficient facts available to Office Cosgrove to conduct an investigative stop. He had observed the car and its license plate during the chase on December 12th. He recognized the car. He checked the plate based upon the number he had written down that night. He was prepared to identify the driver and question him about those events when he fled. *At that time, probable cause ripened however, he simply did not have time to complete any investigation.* Opinion and Order at 6 (emphasis added). Satterly had a full and fair opportunity to litigate the issue of probable cause and the court's finding was essential to its denial of Satterly's motion to suppress.

This court is bound by the state court's determinations on the issues of excessive force and probable cause. Because they were actually litigated in the state court criminal proceeding and necessary to uphold the judgment therein, Plaintiffs are precluded from relitigating the lawfulness of arrest and reasonableness of force used in the present action. The issues of excessive force and probable cause are therefore not disputed as fact. Accordingly, summary judgment is granted for defendants.[3]

## CONCLUSION

Because the court finds that there are no genuine issues of fact and defendant is entitled to summary judgment as a matter of law, the defendants' motion for summary judgment is granted.

A separate order will be entered herein this date in accordance with this opinion.

---

[3]In light of the court's grant of summary judgment predicated on issue preclusion and an absence of any genuine issue of material fact, the court need not consider the propriety of summary judgment on the separate basis of qualified immunity.